Citation Nr: AXXXXXXXX
Decision Date: 07/30/21 Archive Date: 07/30/21

DOCKET NO. 210405-150333
DATE: July 30, 2021

ORDER

The 100 percent rating for residuals of prostate cancer manifesting in voiding dysfunction is restored, effective January 1, 2021.

Entitlement to a rating in excess of 70 percent for posttraumatic stress disorder (PTSD) is denied.

Entitlement to special monthly compensation based on statutory housebound under 38 U.S.C. § 1114(s) since June 25, 2018 is granted.

Entitlement to a rating of total disability due to individual unemployability based upon service-connected disorders (TDIU) is dismissed as moot.

FINDINGS OF FACT

1. The Veteran's service-connected residuals of prostate cancer manifesting in voiding dysfunction was rated as 100 percent disabling from June 25, 2018 to December 31, 2020.

2. In October 2020, the Agency of Original Jurisdiction (AOJ) reduced the rating for the service-connected residuals of prostate cancer without fully complying with applicable regulations; therefore, the rating reduction is void ab initio.

3. Throughout the period on appeal, the Veteran's PTSD manifested as occupational and social impairment with deficiencies in most areas without total occupational and social impairment.

4. Since June 25, 2018, the Veteran is in receipt of a 100 percent rating for residuals of prostate cancer and has additional service-connected disabilities independently ratable at 60 percent.

5. Effective June 25, 2018, the Veteran has been awarded special monthly compensation which is a higher entitlement than TDIU and entitlement to a TDIU is moot.

CONCLUSIONS OF LAW

1. The criteria for restoration of the 100 percent rating for residuals of service-connected prostate cancer have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.344, 4.14.14, 4.13.

2. The criteria for the assignment of a rating greater than 70 percent for PTSD have not been met. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.102, 4.14.14, 4.126, 4.130; Diagnostic Code 9411.

3. The criteria for entitlement to special monthly compensation based on statutory housebound under 38 U.S.C. § 1114(s) since June 25, 2018 have been met. 38 U.S.C. § 1114(s); 38 C.F.R. § 3.350(i).

4. The appeal as to the issue of entitlement to a TDIU effective June 25, 2018 is dismissed as moot. 38 U.S.C. § 7105(d)(5); 38 C.F.R. §§ 20.202, 20.204.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Navy from August 1963 to August 1967, which includes verified service in the Republic of Vietnam from July 1966 to September 1966. The claims come before the Board of Veterans' Appeals (Board) on appeal of an October 15, 2020 rating decision issued by a Department of Veterans Affairs (VA) Regional Office (RO). The rating decision constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. 

In the April 5, 2021 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Evidence Submission docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran or his attorney with, or within 90 days from receipt of, the VA Form 10182in other words and in this instance, as of October 15, 2020, or else within 90 days after April 5, 2021. 38 C.F.R. § 20.303. The evidentiary window during which evidence could be added for Board review at this time has since lapsed. The Board asserts jurisdiction accordingly.

By way of background, the October 2020 rating decision on appeal communicated to the Veteran a proposal to reduce the rating for prostate cancer effective January 1, 2021, a denial of any increase in excess of 70 percent for PTSD, and a proposal to reduce SMC effective January 1, 2021. The Veteran returned a completed Notice of Disagreement received on April 5, 2021, perfecting an appeal for "entitlement to an increased rating for voiding dysfunction," entitlement to an increased rating for PTSD, and for entitlement to a TDIU "based on the increased rating for PTSD." The Board incorporates the claim for TDIU accordingly, as part and parcel of the claim for increased ratings. See Rice v. Shinseki, 22 Vet. App. 447 (2009). The Board has also recharacterized the "increased rating" claim for prostate cancer residuals as one for the propriety of a reduction, as stated on the title page.

This appeal has been advanced on the Board's docket on account of advanced age. 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2).

1. The 100 percent rating for residuals of prostate cancer manifesting in voiding dysfunction is restored, effective January 1, 2021.

By way of background, the Veteran is service connected for residuals of prostate cancer status-post radical prostatectomy and this disability has been rated as 100 percent disabling effective June 25, 2018. See Rating Decision (Aug. 15, 2018). Thereafter, an April 30, 2019 rating decision indicated a proposal to reduce this disability from 100 percent to 60 percent. This reduction was confirmed as to be effective January 1, 2020. See Rating Decision (Oct. 1, 2019). However, a June 15, 2020 rating decision recognized clear and unmistakable error in this reduction and accordingly restored a 100 percent rating. See Rating Decision (June 15, 2020). Subsequent to this rating decision, the Veteran submitted to a VA examination in July 2020. See VA Exam ( July 24, 2020 ). Due to results from this exam, the Veteran's prostate disorder was proposed to be reduced from 100 percent disabling to 40 percent disabling. See Rating Decision (July 27, 2020); Proposal to Reduce Service-Connected Compensation (rec'd July 28, 2020). Finally, the Veteran was issued a rating decision on October 15, 2020, stating that the reduction shall take effect on January 1, 2021. 

The Veteran's claim on appeal arises from this rating decision, and the Board asserts jurisdiction accordingly. The Board ultimately finds that this reduction is also improper; therefore, the previous 100 percent rating should be restored effective June 25, 2018. To the extent that the Veteran may otherwise have a further claim for an increased rating, this claim would be dismissed because a restoration of the original 100 percent rating represents a maximum grant of the benefit sought on appeal. See AB v. Brown, 6 Vet. App. 35, 38-39 (1993) (finding that veterans are generally presumed to be seeking the maximum benefit allowed, unless they expressly indicate otherwise); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (where the law, not the evidence, is dispositive, the appeal should be terminated for lack of legal merit or entitlement).

A claim stemming from a rating reduction action is a claim for restoration of the prior rating, not a claim for an increased rating. Peyton v. Derwinski, 1 Vet. App. 292 (1991); Dofflemyer v. Derwinski, 2 Vet. App. 277, 280 (1992). There are certain procedures that are required when a rating is reduced and the lower rating would result in a reduction or discontinuance of compensation payments being made. See 38 C.F.R. § 3.105(e). Specifically, when reduction of a rating is considered warranted and the lower rating would result in a reduction or discontinuance of compensation payments currently being made, a rating proposing the reduction or discontinuance will be prepared setting forth all material facts and reasons. The beneficiary will be notified at his latest address of record of the contemplated action and furnished detailed reasons therefore, and will be given 60 days for the presentation of additional evidence to show that compensation payments should be continued at their present level. Unless otherwise provided, if additional evidence is not received within that period, final rating action will be taken and the award will be reduced or discontinued effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires. 38 C.F.R. § 3.105(e).

When the AOJ proposed to reduce the ratings, the AOJ mailed a notice to the latest address of record. The notice informed the Veteran of the procedures for the presentation of evidence, the right to a hearing, and representation options. The RO considered the evidence and proceeded with the rating reduction. The effective date of the reduction was more than 60 days after the notice of reduction. Therefore, the Board finds that, in reducing the rating, the AOJ complied with the procedures outlined under 38 C.F.R. § 3.105(e).

Turning to whether the rating reduction was proper, the Board finds it was not as the Veteran's condition had not demonstrated sustained, actual improvement before the rating was reduced. VA assigns disability ratings by evaluating the extent to which a veteran's service connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule). 38 U.S.C. § 1155; 38 C.F.R. Part 4 (including §§ 4.1, 4.2, 4.10). Certain regulations "impose a clear requirement that VA rating reductions, as with all VA rating decisions, be based upon a review of the entire history of the veteran's disability." Brown v. Brown, 5 Vet. App. 413, 420 (1993) (referring to 38 C.F.R. §§ 4.1, 4.2, 4.13). A rating reduction requires an inquiry as to "whether the evidence reflects an actual change in the disability and whether the examination reports reflecting such change are based upon thorough examinations." Brown, 5 Vet. App. at 421. Thus, in any rating reduction case, it must be determined not only that an improvement in a disability actually occurred, but also that the improvement reflects an improvement under the ordinary conditions of life and work. 38 C.F.R. § 3.344(c); see Brown, 5 Vet. App. at 420-421 (citing 38 C.F.R. §§ 4.1, 4.2, 4.10, and 4.13). 

In considering whether a reduction was proper, the Board must focus on the evidence of record available to the AOJ at the time the reduction was effectuated, although post-reduction medical evidence may be considered for the limited purpose of determining whether the condition had demonstrated sustained, actual improvement. Dofflemyer v. Derwinski, 2 Vet. App. 277, 281-82 (1992). Failure to consider and apply the applicable provisions of 38 C.F.R. § 3.344 in such cases renders the rating decision void ab initio, that is, void from the beginning. See Greyzck, 12 Vet. App. at 292, see also Hayes v. Brown, 9 Vet. App. 67, 73 (1996); Dofflemeyer v. Derwinski, supra; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991) (holding that a rating reduction made without observance of law must be vacated and the prior rating restored). 

Regarding improvement, the Board notes that the provisions of 38 C.F.R. § 3.344(a), which apply to ratings in effect for five years or more are not for application here because the 100 percent rating for residuals of prostate cancer was in effect from June 25, 2018 to December 31, 2020, a period of less than five years.

Rather, the provisions of 38 C.F.R. § 3.344(c) concerning disabilities that have not stabilized, are applicable. This regulation provides that reexaminations disclosing improvement will warrant a rating reduction. However, in any rating reduction case, not only must it be determined that an improvement in disability has occurred, but also that that the improvement in disability actually reflects an improvement in the appellant's ability to function under the ordinary conditions of life and work. See Faust v. West, 13 Vet. App. 342, 349 (2000). The burden of proof is on VA to establish that a reduction is warranted by the weight of the evidence. Kitchens v. Brown, 7 Vet. App. 320 (1995). Meanwhile, the Board cannot ignore the fact that once the VA undertakes to provide an examination or obtain an opinion, it must ensure that the examination or opinion is adequate. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

Here, the Board finds that VA has not met its burden to show improvement in the Veteran's ability to function under the ordinary conditions of life and work based on improvement in his prostate cancer residuals. Specifically, the examination report indicates contrary findings that cannot be reconciledthe report states that the Veteran underwent a prostatectomy in August 2018, but also has not completed or undergone any treatment except for watchful waiting. See VA Exam (July 24, 2020), supra, at Questions Nos. 2A and 3. The Board concludes that upholding the propriety of this reduction would be despite contradictory findings in an accordingly inadequate VA examination. 

Moreover, neither the VA examiner nor the AOJ discussed whether the conditions had demonstrated sustained improvement and whether the evidence made it reasonably clear that the improvements would be maintained under the ordinary conditions of life, as required by 38 C.F.R. § 3.344. Thus, the rating reduction also did not adequately detail the reasons for the reduction, such that the Veteran would understand what evidence would be sufficient to show that compensation payments should be continued at their present level. As a result, the Board concludes that the AOJ reduced the rating without observing the protections in place under 38 C.F.R. § 3.344. Accordingly, the October 2020 rating reduction for residuals of prostate cancer is void ab initio and the 100 percent rating shall be restored effective January 1, 2021.

2. Entitlement to a rating in excess of 70 percent for PTSD is denied.

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate Diagnostic Codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § Part 4. Although a disability must be considered in the context of the whole recorded history, including service treatment records, the present level of disability is of primary concern in determining the current rating to be assigned. 38 C.F.R. § 4.2; Francisco v. Brown, 7 Vet. App. 55 (1994); Schafrath v. Derwinski, 1 Vet. App. 589 (1991). If a disability has undergone varying and distinct levels of severity throughout the claims period, staged ratings may be assigned. 

A critical element in permitting the assignment of several ratings under various Diagnostic Codes is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 262 (1994); 38 C.F.R. §§ 4.104, 4.115a. 

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. It is permissible to switch diagnostic codes to reflect more accurately a claimant's current symptoms. See Read v. Shinseki, 651 F.3d 1296, 1302 (Fed. Cir. 2011). 

With respect to mental disorders, where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

The General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130 provides the following ratings for psychiatric disabilities: 

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130.

A 100 percent rating is warranted for total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

When determining the appropriate disability evaluation under the general rating formula, the primary consideration of the Board is a Veteran's symptoms, but it must also make findings as to how those symptoms impact the Veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). A veteran may only qualify for a given disability rating under the general rating formula by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Id. at 117-18. The symptoms listed are not exhaustive, but rather "serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In the context of determining whether a higher disability evaluation is warranted, the analysis requires considering "not only the presence of certain symptoms[,] but also that those symptoms have caused occupational and social impairment in most of the referenced areas." Vazquez-Claudio, 713 F.3d at 117; 38 C.F.R. § 4.130. 

The Board is in receipt of a psychiatric examination performed by J.S.S., Ph.D., HSPP. See Medical Treatment Record ( Mar. 30, 2021 ) (rec'd Apr. 5, 2021). As the Veteran requested Evidence Review of the October 15, 2020 rating decision, and as this report was associated with the claims file during a permissible evidentiary window, the Board can consider the report in adjudicating the claim to the extent that the examination references function impairments present during the rating period on appeal. 

Throughout the period on appeal, the Veteran has been afforded a 70 percent rating for service-connected PTSD. 38 C.F.R. § 4.130, Diagnostic Code 9411. The Board received the Veteran's Notice of Disagreement on April 5, 2021. There is no specific argument as to why a rating in excess of 70 percent should be warranted at any time during the appellate period. 

Based on the record, the Board finds a rating in excess of 70 percent is not warranted as total social and occupational impairment was not demonstrated during the appeal period. A July 2020 VA PTSD Disability Benefits Questionnaire (DBQ) report noted that the Veteran had been married to his spouse for 55 years, that they have two surviving adult children that live near them, that they have nine grandchildren and that the will not be able to attend an upcoming wedding due to COVID-19 restrictions and their ages. The April 2021 private evaluation reflected the Veteran's reports that he did not have a social life outsides of his spouse, children and grandchildren. Such does not represent total social impairment.

Moreover, the evidence does not show, and the Veteran has not alleged, gross impairment in thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living, disorientation to time or place or memory loss for names of close relatives, own occupation, or own name. Although a history of suicide attempts is noted in the record and the April 2021 private evaluation suggests that the Veteran continued to struggle with suicidal ideation, a persistent danger of hurting himself was not demonstrated. The April 2021 private evaluation reflects that the Veteran will call the crisis line when he experiences such ideation and the record does not reflect suicide attempts during the appeal period. The Veteran has also been able to maintain personal hygiene with the assistance and urging of his spouse. Additionally, none of the Veteran's PTSD symptoms are similar in severity, frequency, or duration as found necessary for the assignment of a 100 percent rating.

Finally, the Board notes that both the VA examiner and the private psychologist found that there was no more than social and occupational impairment with deficiencies in most areas in their respective evaluations. The July 2020 VA examiner found that there was occupational and social impairment with occasional decrease in work efficiency and intermittent periods of an inability to perform occupational tasks. In contrast, the private psychologist found that there was occupational and social impairment with deficiencies in most areas in the March 2021 private evaluation.

In making its determinations in this case, the Board has carefully considered the Veteran's contentions with respect to the nature of his PTSD and notes that his statements are competent to describe certain symptoms associated with that disability. The Veteran's history and symptom reports have been considered, and has been contemplated by the disability ratings that have been assigned. Moreover, the competent medical evidence offering detailed specific findings pertinent to the rating criteria is the most probative evidence when evaluating the pertinent symptoms of the Veteran's PTSD. As such, while the Board accepts the Veteran's statements concerning the matters he is competent to address, the Board relies upon the competent medical evidence with regard to the specialized evaluations of functional impairment, symptom severity, and details of clinical features of the service-connected condition at issue. 

The Board has also considered whether a staged rating under Hart, supra is appropriate for the Veteran's PTSD; however, the Board finds his symptomatology was sufficiently stable throughout the period on appeal. Therefore, assigning a staged rating for such disability is not warranted. Finally, neither the Veteran nor his attorney have raised any other issues, nor have any other issues been reasonably raised by the record, with regard to the claim adjudicated herein. See Doucette v. Shulkin, 28 Vet. App. 366 (2017).

Accordingly, the Veteran's claim for an increased rating in excess of 70 percent for PTSD is denied. There is no doubt to resolve. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

3. Entitlement to special monthly compensation based on statutory housebound under 38 U.S.C. § 1114(s) since June 25, 2018 is granted.

4. Entitlement to a rating of TDIU is dismissed as moot.

When the Veteran's residuals for service-connected prostate cancer were proposed to be reduced, the AOJ also stated that special monthly compensated was similarly proposed to be reduced. However, a TDIU is considered a lesser benefit than the 100 percent rating, and the award of a 100 percent rating generally renders moot the issue of entitlement to a TDIU for the period when the 100 percent rating is in effect. An exception to this is a separate award at the housebound rate or a TDIU predicated on a single disability (perhaps not ratable at the schedular 100-percent level) when considered together with another disability separately rated at 60 percent or greater may warrant payment of special monthly compensation under 38 U.S.C. § 1114(s). Bradley v. Peake, 22 Vet. App. 280 (2008).

The Board notes that the Veteran was previously awarded special monthly compensation at the housebound rate pursuant to 38 U.S.C. § 1114(s)(1), effective June 25, 2018, in an August 2018 rating decision as the Veteran had a 100 percent rating for residuals of prostate cancer and additional disabilities independently rated at 60 percent or more. See also Bradley v. Peake, 22 Vet. App. 280 (2008) (finding that special monthly compensation "benefits are to be accorded when a veteran becomes eligible without need for a separate claim"); Buie v. Shinseki, 24 Vet. App. 242 (2011) (requiring the Board to consider awarding special monthly compensation at the housebound rate if a veteran meets the requisite schedular or extraschedular criteria).

Special monthly compensation provided by 38 U.S.C. § 1114(s) is payable where the veteran has a single service-connected disability rated as 100 percent and (1) has additional service-connected disability or disabilities independently ratable at 60 percent, separate and distinct from the 100 percent service-connected disability and involving different anatomical segments or bodily systems, or (2) is permanently housebound by reason of service-connected disability or disabilities. This requirement is met when the veteran is substantially confined as a direct result of service-connected disabilities to his or her dwelling and the immediate premises or, if institutionalized, to the ward or clinical areas, and it is reasonably certain that the disability or disabilities and resultant confinement will continue throughout his or her lifetime. See 38 C.F.R. § 3.350(i).

In the instant case, the Veteran is again in receipt of a 100 percent rating for residuals of prostate cancer and has additional service-connected disabilities independently ratable at 60 percent since June 25, 2018. Specifically, to the extent that benefits for prostate cancer were previously proposed to be reduced, the Board determined above that this reduction is improper. Meanwhile, the Veteran's other ratings are at least 60 percent disabling, including but not limited to PTSD rated as 70 percent disabling. Therefore, special monthly compensation at the housebound rate is warranted since June 25, 2018as was the case prior to the October 2020 rating decision on appeal and as is the case once again upon restoration of the rating after an improper reduction in rating for the prostate cancer.

(Continued on the next page)

 

As a result of this decision, the Veteran is now in receipt of special monthly compensation throughout the period on appeal. Special monthly compensation is a higher benefit than TDIU; therefore, the issue of entitlement to a TDIU must be dismissed as moot. 38 U.S.C. § 5110(a)-(b)(1); 38 C.F.R. § 3.400(b)(2). See also Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (where the law, not the evidence, is dispositive, the appeal should be terminated for lack of legal merit or entitlement). Therefore, to the extent that the Veteran seeks entitlement to a TDIU, this claim is moot and the appeal is dismissed.

 

 

KRISTY L. ZADORA

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Michael B. Engle, Associate Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.